May it please the Court, Counsel, my name is Mike Moses, I represent the appellant Gwendolyn DeLopez and I want to focus this morning on the evolving issue of the interplay between the pretext prong of the McDonnell-Douglas framework, the application of the Honest Belief Rule on summary judgment, and the problematic situation in the district courts of having to sift through the pretext prong in the Honest Belief Rule and the difficulty of not making credibility judgments when those two are played off against each other. And I'm sure as the Court knows that the pretext prong of the McDonnell-Douglas rule requires that a plaintiff, after a defendant has set forth a supposedly non-discriminatory legitimate reason for its adverse employment action, the plaintiff has to point up inconsistencies, implausibilities, incoherencies with the stated explanation of the employer. And then over the past 10 years, the Honest Belief Rule has come into play in all the federal appellate courts across this nation. And it has led to differing results all over the map with regards to how the Honest Belief Rule should be applied under the McDonnell-Douglas framework and when is it appropriate not to apply it. And so in the case, and this particularly on summary judgment, where in this case we maintain that the district court made improper credibility determinations on the motivations of the employer that we called into question through pretext evidence. What's the, you know, what makes the school district's position here unworthy of belief? We're stuck with McDonnell-Douglas. I actually agree with some of the sentiments that you're That's our legal framework here. And what about these facts make them unworthy of belief, you know, not a credible or plausible basis for the school district's action? It's not a very legal academic word, but the ginormous problem here, of course, is that Ms. DeLopez received a letter of reprimand for the alleged conduct that we do not concede had just cause for, but the alleged conduct that happened in her dealings with a developmentally disabled student in her classroom. She received a letter of warning, a letter of reprimand. And as you go through this, link it up to the misconduct, which is age discrimination. Correct. And so what happens is that in the very same meeting where Ms. DeLopez is issued the letter of reprimand, without any further misconduct having taken place, the conversation turned to a discussion of, we want to get rid of you. And in that discussion, during that discussion, all kinds of threats were made. We outlined those threats of not renewing her contract, and her contract had already been renewed, Judge. And the not renewing her contract, reporting her to the PED, going after her teacher license. So this is the conduct for which she has given a letter of reprimand, and the conversation evolves in the same meeting into, we want to get rid of you. Now in New Mexico, under the School Personnel Act, of course, an appointment memorandum that is given to a teacher guarantees that teacher under the SPA that she will be employed for the following school year. Ms. DeLopez had already received that in April of 2018. So just to get the chronology straight here, she had been renewed on her contract. Correct. Before the incident with the autistic child. Correct. And that renewal is important, Judge Briscoe, because at the end of the day, the renewal was an enforceable contract contract under the SPA, which of course would allow Ms. DeLopez to access the due process protections that she had as a certified school instructor under New Mexico law. But getting back to what happened with regards to the conversation that led to her involuntary resignation, and the transcript, and the information that's provided in the record shows that this was completely involuntary. She was threatened with every threat that could possibly be made against a school teacher. We're terminating you immediately. We're not renewing your contract. We're going after your teacher's license. And so in that intolerable situation, where it was either give up your license or we're going after it, where it was either resign or you're going to be terminated, either agree with us or we're not going to allow, we're not going to follow through on the renewal of the contract that we've already promised you. So the law is very, very clear. And I think the case of Stroop v. United Airlines that was decided this February in this court is absolutely fundamental to our claim of pretext. And ever since St. Mary's Honor Center v. Hicks and going back to Reeves v. Sanderson plumbing, the Supreme Court has said, hey listen, if an employee, if the jury disbelieves the employer's explanation, you get there. You get to a finding of discrimination. That raises an inference that's And so what happens in this case is that under the threat of losing her job, she actually wrote on the resignation letter that they had written for her, signed under pressure. And they required her to remove that from the letter before she signed it. And but the transcript is just filled with threats and we're going to do this, reporting her to the criminal authorities because it was a criminal case. What is the tie-in to the age though? The tie-in to the age is, with regards to age discrimination, this court has found, for example, in Stroop, that the jury's disbelief raises such a strong inference. In Stroop, for example, it happened where there were no ageist claims, no direct evidence of discrimination. In the Stroop case, this court decided, hey listen, the showing of pretext on the testimony of the defendant's witnesses, the employer's witnesses, was strong enough to win the day. And find an age discrimination, fine for age discrimination, although there were no comments. There was no direct evidence. The jury's disbelief is strong in this case of the motivations of Bernalillo Public Schools to find age discrimination. What are the, what is the evidence of the motivations? We know her age. We know that she was either, she either resigned or was constructively terminated. Yes. Where's evidence of age discrimination? For example, in Stroop, this court said. Talk about this case. It, that post hoc explanations for a termination, a constructive termination, are evidence of pretext. So what do we have here? We have reference to statutes. But she was given those references to statutes ahead of time. No, she was not, Your Honor. Orally, or in a letter, or somewhere. Nothing, absolutely nothing. Your argument is she was, they were only citing to those statutes after she was terminated. After she was terminated, the public school district came forward with 32A-6A-10, which only applies by its own language to developing disabled children in a treatment facility. But if the discrimination was pretext, there would be just as much basis to say the pretext was for German national origin as there would be for age, wouldn't there? But the law does not, the jury has the province to determine that. Yes, a jury could decide, hey, if the defendants wanted to make that argument, the jury can certainly decide, hey, listen. But you're saying there's no such thing as summary judgment, aren't you? No, I'm not saying that. I'm saying where an issue of fact is raised on the motivation of the employer, the employer's explanations, then that case should not go out for summary judgment, even if they honestly believe it. But again, the question is, how can you honestly believe that a letter of work demand is sufficient for the accused conduct, and then in the same conversation say, oh, not enough, without explanation, not enough, we're going to force you out of your employment. Didn't you have a sex discrimination and national origin discrimination claim in this case? There was originally, Your Honor, and we decided that the evidence did not support that. Under the argument you're presenting this morning, a jury could find national origin or sex discrimination if the jury disbelieved the rationale for termination, right? And again, this court many times, DeWitt, Jones v. Oklahoma, has found that the jury's disbelief of the employer's explanation is sufficient in order to make a finding of intentional discrimination. It's no different here. Well, did you have more evidence that would support age discrimination as you did German national origin? For example, she was one of the oldest teachers in the school system. She's 55, and over 70% of the teachers are over 40. Yeah, but in that group, in that under 55 to 40 group, that's where the teachers were. She was an expensive teacher. And so I guess our argument is they can present that evidence to a jury, but the evidence needs to be presented to a jury for their fact-finding. Here, the court made credibility determinations, and I'd like to reserve my time. All right, you may. Thank you. Let's hear from the school district. Ms. Van Meter. Good morning. And may it please the court. I'm Lindsay Van Meter. I'm here on behalf of defendants, Bernalillo Public Schools, and the four individually named defendants. Our argument here today is that the district court's decision is clear, it's carefully decided, it's well-reasoned, and it should be affirmed on all grounds. And should this court decide to overturn on the basis of pretext, then this court would also need to look at the alternative grounds for affirming that the BPS and the defendants have raised, including that plaintiff was not qualified for her position given her repeated violations of policy and her unprofessional conduct toward her co-workers, and that plaintiff was not constructively discharged. And finally, that plaintiff failed to exhaust her administrative remedies against the individual defendants for her New Mexico Human Rights Act claim, and that therefore, those counts should not be able to proceed against them. Getting to the question of the honestly held belief that was raised, I believe, for the first time here at oral argument, I don't believe that it would be appropriate for this court to overturn that, both based on the precedent that governs here, and because it was raised for the first time here at oral argument. The court's exactly right that there is no evidence of age discrimination. There were no ageist remarks. There were no comments about her age. And in fact, the record is at the supplemental appendix page 64, shows that in the letter of reprimand issued to Mr. Lopez on May 10th, 2 o'clock p.m., the meeting at which Mr. Moses spent some time discussing, it did reference both New Mexico Statute 32A-6A-10, subparagraph A, and House Bill 75, which was subsequently codified as NMSA 22-10A-12, I'm sorry, I might get this wrong, 4-.12, I believe is the citation. Both of those can be reasonably construed as prohibiting a teacher from using any form of physical restraint on a student who is calm and de-escalated, which is undisputedly the situation in this case. So the conclusion then by the school district is that she had violated the law? Yes, and that she had violated school board policy, including by touching the student and by taking the student out of her classroom. And by violating, but in violating the law, did the school district also agree not to report that? So in that meeting, the human, and would that be evidence of age discrimination? I don't believe so, Your Honor. The human resources director did state that the... Well, I'm getting down to why did you really fire her? If she say, well, this is a horrible thing you've done, you violated state statutes and let us count the ways. But then when it's all said and done, it's, oh, never mind. We won't tell anybody about that. Right, so first she was offered the opportunity to resign, and that is what she elected to do. And in electing to do that, she did decide not to pursue all the administrative remedies available under the School Personnel Act, whereas the just cause legal question would have been presented. That would have had to been appealed to an arbitrator and decided there, and it actually would probably not ever end up in before this court. Thank you for letting me address that before addressing your question. The human resources director did state that it would not be reported to the school, the public education department, if she were to resign. Later on, the superintendent and deputy superintendent reviewed this and determined the state statute required them to report it. And in fact, it's a criminal violation if they had not reported it. I would do believe that that statutory requirement really required them to report this, regardless of what representations had been made. And those representations... But don't we look at the representations made while the plaintiff was in the room? And the deal that she thought was struck at that point? The only bearing, the only question on which that fact has a bearing is whether there was a constructive discharge. And regardless of whether there was a constructive discharge in this case, plaintiff still fails to show pretext. And so she also fails to show that the pretext, that even if there was an inconsistency, that anything was age-related, which is also a requirement for showing a constructive discharge under the ADA and the Mexican Human Rights Act. So I don't believe that that question really affects the decision and the district court's decision in this case addressed it very, very well and thoroughly by even assuming that there was a constructive discharge. She fails to show the elements of her case for an age discrimination claim. I do want to spend just a couple of moments on the contract question in this case. The court relied on the case of Sanchez. And in that case, an employee alleged that he was forced to retire and not given an opportunity to therefore have a hearing. And he then went and attempted to request a hearing. The school board had an informal hearing but did not have a formal hearing. I do believe that the facts of this case are closest to that case more than any other case that there is in New Mexico regarding the School Personnel Act. And that case makes it clear that one cannot argue a violation of a contract without also going through the mandatory steps of exhausting the administrative remedies available to them under the School Personnel Act. Plaintiff was not, I am going to briefly touch on facts related to the alternative arguments in this case. Plaintiff had repeated violations of school board policy, including rudely addressing her co-workers, and then pulling a scab off of a student, whether or not it was an accident, it was not appropriate, and also then carrying the student out of the classroom. But after the first two that you've listed, they offered a renewal of contract. Yes, and I do want to address that.  And then something else happens, and it's even more egregious than the prior violations, of course, and employers, well within their rights to then, at that point in time, take action. And so what was issued here was a letter of reprimand, and what was offered was an opportunity to resign, which Ms. De Lopez did accept. So under those circumstances, we believe that she has not met the first, or two out of the four elements of her prima facie case of age discrimination. And then our alternative argument regarding her failing to exhaust her administrative remedies. This is an issue of law that is not very clear under the New Mexico court's decisions. Plaintiff did not present evidence when she was provided the opportunity to to demonstrate that her attorney-client relationship formed after she filed her EEOC claim in this case. And the EEOC form itself, which is the one that she filled out, actually does allow amendments, and that's at the Supplemental Appendix, page 195, paragraph 5. The New Mexico Human Rights Act Administrative Code also allows amendments, which is at NMAC 9.1.1A3. So I don't believe that it is reasonable in this case where a plaintiff was clearly informed of defendant's positions that the administrative remedies were not exhausted against these people, and then he asked the New Mexico Human Rights Board to issue a non-determination letter, that it's fair to say that plaintiff did not have an opportunity to exhaust the administrative remedies in this case. Plaintiff does point out something that I did get wrong in my response brief, and I do apologize to plaintiff and the court. I did say that the district court properly concluded that a constructive discharge is not an independent cause of action. The court actually just skipped over looking at that question and addressed it. So my apologies. The reality is, even if there was a constructive discharge, in this case, plaintiff still cannot show pretext. She was told that her contract would not be renewed because of the repeated policy violations and potential statutory violations in this case. Plaintiff continues to misconstrue the public education department's final action in an effort to make it support her claim. On page 9 of her reply brief, plaintiff states that the investigation found no wrongdoing. The PED only decided not to prosecute. That is not any sort of a finding. We have no information as to the reason for its decision. It does not undermine the employer's decision, in this case, not to renew her contract and to also report it to the PED. Should the court find it necessary to address the new arguments made by plaintiff in her reply brief about New Mexico Statute 22-10A-4.12, please consider that this is the relevant portion of House Bill 75. So in the letter of recommend, House Bill 75 is addressed in our briefing, the statutory provision is addressed. It was the justification for the letter of recommend and for the statements by the HR director that they were not going to renew plaintiff's contract. We do reference that House Bill 75 in the motion for summary judgment at paragraph 31 and paragraph B-3 of the statute does not require the district to train plaintiff. It says, if a restraint or seclusion technique is used on a student, the restraint or seclusion technique shall be used only by school personnel who are trained in the safe and effective use of restraints and seclusion techniques, unless an emergency situation does not allow sufficient time to summon those trained school employees. It anticipates there will be some employees at the school who are not trained and it anticipates an emergency situation, which we can all agree did not occur in this case. The question is not whether the school had a safety plan, the question is whether defendants had a legitimate and non-discriminatory business reason for making any deployment action if they did make an employment action against plaintiff. So in conclusion, the district court properly applied the McDonnell-Douglas framework. Defendants had a legitimate non-discriminatory reason to take action against plaintiff. She engaged in unprofessional conduct toward other staff. She pilled a scab off of a student, giving rise to a reprimand in December 2017, in which she was warned that any further inappropriate touching of a student could result in termination. And then after she inappropriately used physical force to move a student and enlisted another student to help remove that student, even though the student was calm, the district had a reasonable and honest belief that she violated both board policy and two-state statutes. We ask the court to affirm. Thank you. Thank you, counsel. We have some rebuttal time left. Thank you. I'm going to try to talk very fast. Number one, in the transcript before she was about any conduct except the conduct related to the May 2018 conduct. So on that issue, that's in the briefs and in the record. Number two, it is undisputed she never received any training with regards to how to handle a developmentally disabled child, although the school was required to provide her that training and the particular statute cited by the defendants, 22-5-4.12, specifically says that there must be a safety plan that's communicated to all the teachers in the school in the event that something such as occurred here. With regards to the Sanchez case, not a constructive discharge case, only had to do with retirement. The SPA policies were the SPA. Defendants have now made a different argument than they made originally on summary judgment. First, they said she waived, my client waived, any kind of remedy under the SPA. But the fact of the matter is, for constructively discharged employees, resigned employees, there are no remedies. As a matter of fact, and one of the things that the district court found was she should have written a letter lining out her disagreements with the employment actions. That's 22-10A-24C. But in that particular provision of the SPA, it says that the entire process is triggered by a notice of termination, which makes perfect sense. So in the absence of a notice of termination, there certainly could not be any reasonable requirement that she respond to something she did not have. I appreciate the attention. Thank you, counsel. Your time's expired. Counsel are excused and the case is submitted.